Good morning, your honors, Mr. Frost. My name is Lori Tyker. I'm appearing on behalf of the appellant, Brooke West. I'll attempt to reserve three minutes for rebuttal. Ms. West stands convicted of the first-degree murder of her mother, Christine Smith, despite the absence of constitutionally sufficient evidence that her death was the result of criminal agency rather than natural causes or accident. The issue here today is whether, under Jackson, there was briefed and raised on direct appeal by Ms. West, and here the Nevada Supreme Court's determination of the sufficiency claim was contrary to clearly established federal law, i.e. Jackson v. Virginia. I direct the court to volume 1 of the EOR at page 75. That's the Nevada Supreme Court published opinion on direct appeal. The court considered the issue of corpus delecti for several pages. The problem lies with the conclusion. Where the analysis results in a holding that's contrary to Jackson. I direct the court to the final paragraph dealing with this issue, where there's been a long discussion of Nevada state case law and corpus delecti, and then they determined what their finding of sufficiency is under Jackson. The court says that there's sufficient evidence of corpus delecti, but states that finally, even though West presented medical evidence that Smith may have died by natural causes, the jury was at liberty to weigh this evidence along with the evidence that Smith died by criminal agency. The footnote's what's problematic when read along with the sentence. Which footnote are you talking about? I'm sorry? Which footnote? The footnote 24. Okay. Footnote 24 refers you to Middleton, which the court's been discussing and determining and looking at the evidence as to whether or not there's sufficient evidence of corpus delecti here. What the court – where the court becomes contrary to Jackson – is dealing with this footnote. Middleton is another case that does talk about Nevada state law and the definition of corpus delecti, but the problem occurs with the parenthetical. If you look at the parenthetical, the parenthetical is where the Nevada Supreme Court states, noting that where there is conflicting testimony at trial, the jury, and not this court, determines the weight and credibility of the testimony. What the court's saying here is that, true, the court needs to review the evidence in the light that's most favorable to the prosecution and whether any rational trier of fact could have found the essential elements of the crime, but the court – the court needs to review all the evidence itself under Jackson, not simply rubber stamp the jury's verdict, which is what's – what's being discussed   suggested here. If you look at the evidence, the jury could have found sufficiency, therefore it's okay under Jackson, but the jury – they're not applying the right standard here. They have to make that determination, not just simply rubber stamp what the jury has already said, and that's what this final conclusion that the Nevada Supreme Court says and the parenthetical suggests, is that it's a contrary to application of Jackson. In the alternative, under 2254 D-1-2. Well, does that get you where you're – let's assume that we agree with you on that. Does that really get you where you're going? You still have to satisfy Jackson? Yes. I mean, let's assume we're sitting here under a totally de novo standard. You still have to meet Jackson, so explain to me how you – how construing the evidence in the light most favorable to prosecution, that you're – you're client – we should grant your client habeas relief. My argument, Your Honor, is that under contrary to, the Nevada Supreme Court got it wrong, and when a state court does that, the habeas court is here to say that was wrong. You looked at it contrary to Jackson, therefore the writ should be granted. In determining the sufficiency of the evidence under Jackson, and whether or not it was an unreasonable application of Jackson and or an unreasonable determination of the facts in the light of the evidence presented to the state court, again, recognizing that all the facts have to be viewed in the state most favorable to the government, et cetera. What you have here is circumstantial evidence. Everyone agrees that what was presented to the jury consisted of completely circumstantial evidence. That evidence was constitutionally insufficient to show that Smith's result – Smith's death was the result of criminal agency perpetuated by Ms. Bobbitt. That evidence alone, and we all agree that that can sustain a conviction, but there's a difference between inference and speculation. What you have here is that inference and what the court and the jury needed to look at would be a reasoned deduction from the circumstantial evidence, a reasoned deduction. I don't think a jury could make a reasoned deduction when the state doesn't have to prove the manner of death and the petitioner placed Ms. Bobbitt – Ms. Smith's body in a trash can in a storage facility, then lied about it for years. I think there was also evidence that they had a very contentious relationship. You don't think that's sufficient for – I mean, there was a bag tied behind her head. I know there were other explanations that were offered by defense, but that's not sufficient? No. No. And that's what I think that Jackson is here to protect against, is a jury certainly can come to a verdict, but that's not constitutional under Jackson. And it can't – the argument is that what was presented wasn't reasoned deductions, but it was a lot of speculation. And in looking at a Jackson sufficiency analysis, which I argue the Supreme Court did not do appropriately in this case, you need to look at the entire record and all of the evidence that was presented. And when you look at all of the specific things that, Your Honor, you just mentioned, there are equally compelling reasons to suggest that that was not a result of any kind of criminal agency on the part of Ms. West. Aside from the fact that the coroner couldn't ascertain a cause of death, what do you have? What are the most powerful – what's the most powerful piece of evidence that you have that your client, in fact, didn't kill her The most powerful evidence is that there is no direct evidence suggesting that. What you have is a lot of things, a lot of little things that were put together by the State to try to circumstantially prove that she did it, but none of those things add up. You've got the admission she admitted that she put the mother into the storage container. That was an admission that she made. But even though that was a strange and inappropriate manner in terms of how to deal with someone that's died, that's not murder. Her mother who had died. Yes. And then lied about it to people's faces directly for years. There's also a reasonable inference that can be made based on that and the other circumstantial evidence that was brought forth. I'm trying to figure out what's the evidence that you're wanting us to focus on that would She didn't do it. Everything to prove that that is purely that. It's purely speculation. In terms of lying about, the State made a big deal and tried to say that because she lied about it for so many years that must mean that she did it. Well, she had a motive to lie about that in terms of continuing to collect the Social Security. She was collecting the money. She admitted to doing that. And she was collecting, that was a reason for her mother's body not to be found. If you look at all of these inferences and the speculation that happens in this case, why in the world would she choose to place the storage container in her own rented under her name storage unit? It just doesn't make any sense to It doesn't make any sense whether she's killed her or whether she died of natural causes and she wrapped up her mother in Saran wrap or whatever it was. It doesn't make any sense either way. But it's not murder. Well, it's consistent with murder, isn't it? There was testimony that it would be consistent with that, with the tape around her mouth and all of this, in addition to putting, well, it slipped, but there was testimony it could have been around her mouth and those. That's another thing added to the other circumstances, isn't it? But there's equal evidence to suggest that that wasn't evidence of murder and that was presented to the jury in that the bag, it wasn't taped. So isn't it up to the jury then to decide what? Right. It did. It could have gone either way. I'm sorry? It could have gone either way. It could have gone either way. But what this Court is here to do is to determine under Jackson whether or not it's sufficient. And the whole point of Jackson is under the Constitution and under due process, we have to determine there can be cases where the jury gets it wrong. In the light most favorable to the prosecution, that's part of the standard. Yes. Okay. How do you respond to that? Because it's not substantial circumstantial evidence, as the Attorney General suggests. It's slight and it's speculative when you add up each of these little things. When you look at what the coroner testified to and all the things that were precluded from any evidence that an actual murder occurred before the body was placed within the storage container, everything was ruled out in terms of whether or not there was a shooting, there was a murder, there was no ripping of the clothes, there was plenty of evidence that her health was poor. There was plenty of evidence. And the coroner determined that he could not make any kind of a finding to show that the bag placed over, and it was not taped, the bag placed over the mother's face, whether or not that had slid down when the body was actually removed from the storage container, whether or not it was even tight enough to, they could not say, the coroner could not testify to any kind of medical certainty that Ms. Smith had been suffocated. In fact, he just couldn't make that determination at all, and the State and rebuttal backed off of that. The State charged in the alternative that they either had to not have to prove how she died or that she died because of suffocation based upon the plastic bag that was over her face. And there was plenty of other reasons as to why one would want to cover the face of a deceased. It happens all the time, of a face being covered after death. Not put in a bag, does it happen all the time? No, that doesn't, and it's strange. Or a storage locker. It's strange, and it could be viewed as inappropriate, but again, it's not murder. What this case was all about was speculation and guessing and not reasoned deductions. What you need to do is to look here and take a close look at the record, and all the evidence that actually was received has to be under a reasonable doubt standard. You have to distinguish between that unsubstantiated speculation, because it really is. There's no direct evidence, and everything was rebutted in terms of what the State put forward as an equally non-criminal reason as to why that happened, and reasonable inference. And this Court's here to patrol the border between those two essential things to avoid the unreasonable application of Jackson. And I see that I have three minutes, so I'll reserve that. Very good. Thank you. Good morning, Your Honor. My name is Jared Frost. I'm with the Nevada Office of the Attorney General from Carson City, and I'm here to ask you to affirm the order of the District Court as the Nevada Supreme Court correctly determined there was enough evidence presented in this case to find that Christine Smith died as a result of criminal agency or foul play. And this is in many ways a unique case with some bizarre facts, and I want to spend most of my time talking about those facts. But first, I want to talk a little bit about how this Court should approach the evidence presented in this case, because I believe there is some disagreement about that. We've already talked a little bit about the standard in Jackson v. Virginia. This is a deferential standard that is specific to claims of insufficiency of the evidence. It has already been stated the Court assesses whether, after viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to prove beyond a reasonable doubt the petitioner's guilt. And now the only aspect of the petitioner's guilt that is at issue today Before you get to that, would you comment on the Nevada Supreme Court decision? I don't think they cited Jackson, did they? I believe they did cite Jackson. Where? I may well have missed it, but I don't see it. If you'll look on page 11 of the extortive record. I have a different copy, so you've got to – I've got the West copy, so you have to point me somewhere in a different direction. Okay. Get me close to a footnote. Yeah, I've got footnote number four, which is citing codes of the state and quoting Jackson v. Virginia there. Okay. You see that? And it says – okay. So they set forth the standard, and then they go further on to that and seem to confuse the standard, as counsel has pointed out, by citing Middleton. What are we to make of that? No, I believe that's entirely consistent with Jackson. Jackson is clear that in reviewing sufficiency of the evidence claims that a reviewing court is not to invade the province of the fact finder in weighing evidence. That's directly from Jackson. And there's also this idea that when there is a historical record that would support conflicting inferences, that those inferences are resolved in favor of the State. That's what the Nevada Supreme Court said. That's entirely consistent with Jackson. That's not exactly what they said in footnote 24, but I accept your explanation. So why don't you go ahead and resume where you were in your argument. Thank you, Your Honor. So anyway, as I mentioned, this is a fairly narrow question that we're looking at today, and that is whether there was sufficient evidence to show that the victim died of criminal agency. Now, in assessing this question, this Court should not, as Wes suggests, consider in isolation only the evidence that supports her theory that the victim died due to natural causes. Instead, under Jackson, the Court considers all the evidence, circumstantial or direct, which the jury could have relied on to make this finding. And there's been a suggestion that that circumstantial evidence is somehow inferior or not as important as direct evidence. That's not correct. Circumstantial evidence can be very powerful evidence. It can come from multiple sources that tend to check and reinforce one another, and oftentimes can be even stronger than direct evidence. The United States Supreme Court referred to this in the Holland v. United States case in which it discussed a little bit about circumstantial evidence. Now, the Jackson v. Virginia is a high standard, a difficult standard to meet, but it's not the only one that's applicable in this case. There's an additional layer of deference which is accorded to any claim that a State court decides on the merits, and that's under the Antiterrorism and Effective Death Penalty Act. And under that standard, a habeas petitioner must show that the State court committed a federal legal error, in this case the application of the already deferential standard in Jackson, beyond all possibility for fair-minded disagreement. And so taking into account these considerations, what evidence was presented at trial to show that Christine Smith died of criminal agency? Well, there were the bizarre circumstances of the discovery of the body. As has been alluded to earlier, Christine, excuse me, Wes's mother was found in a sealed garbage container in Wes's storage unit in Las Vegas. The body was in an advanced state of decomposition. The container, over time, had begun to leak bodily fluids. There was an overpowering stench emitting from the storage unit. There was a plastic bag tied tightly around the victim's head, covering the – blocking the airways. It appeared that the knot had been tied hastily as there was hair interwoven within the knot. There was a homicide detective who actually viewed the autopsy and handled the remains and testified at trial that, in his professional opinion, the victim had been suffocated. And, you know, there's quite a bit of other evidence that I believe anyway points toward a foul play in this case. But even at this point, I think it's fair to say that these are not the kind of circumstances that one would expect to find when someone dies of natural causes or by accident. These are the kind of circumstances that one would find on a TV crime drama. And – But your opposing counsel here submits that, well, there's an explanation for that because of the Social Security check that the mother was receiving, the victim here. And so because of that, that cuts against, I guess, the State's argument that this was sufficient or reasonable. Yes. They do assert this other possible explanation. But once again, under Jackson, where the evidence could suggest more than one possible inference, we assume that the jury resolved that in favor of the State. And for that reason, this evidence shows, I believe, that the victim died of criminal agency, that the jury could have relied on this evidence. There was additional evidence as well. Of course, as has already been mentioned, West admitted that she put the body into the garbage container. There was some very interesting evidence from an entomologist, a bug expert, who testified that given the kinds of bugs that were found with the body, that the body had to have been placed in the container either before death or within eight hours of death. There was, in addition, a healthcare provider, the victim's primary healthcare provider, who testified that around the time of her disappearance, the victim's health was basically stable, that she did not appear to be a person who was about to die. There was also evidence presented to show that West wanted to kill her mother. As Your Honor pointed out, this relationship, mother-daughter relationship, was severely strained. The people who knew West best, those that she confided in, testified that she called her mother controlling, a sociopath, much worse names, that she was the cause of a nervous breakdown suffered by West, that West told her supervisor that her attitude towards her mother was just ripping with anger and frustration, and stated with reference to her mother that she's got to go, she's got to go. There's also evidence that was presented to show that West tried to conceal the murder. The garbage container was wrapped with 150 feet of plastic shrink wrap. It was wrapped with duct tape and plastic bags. It was obvious that West went to a tremendous effort to try to keep this body hidden from view. In the storage unit, there was also, for years afterwards, she told friends and neighbors that the victim went to live with a brother, Travis, in California. However, Travis was never found. Of course, West knew at the time that her mother was, in fact, her body was rotting in a storage unit in Las Vegas. Anyway, as I said, this evidence comes from multiple sources. They reinforce in each other, and I submit that considered together, they represent persuasive, even compelling evidence that the victim died of criminal agency. And before I conclude, I just want to point once again to the district court's order. In denying the claim, the district court looked to the Nevada Supreme Court's order. It correctly noted that the Nevada Supreme Court cited Jackson v. Virginia, that it marshaled the evidence that was presented in favor of this finding that the victim died of criminal agency, and correctly determined that, yeah, there was enough here for a rational jury to find that foul play was involved here. And West has not shown that the evidence in this case was so utterly deficient that this Court should overturn a verdict that was satisfactory for the jury, for the Nevada Supreme Court, and for the United States District Court. She has not met her burden under either Jackson or under AEDPA, and this Court should affirm the United States District Court. Are there any other questions at this time? Any further questions of the panel? Thank you for your presentation. Thank you. Thank you. Under a contrary to evaluation, I believe that footnote 24, as I argued earlier, decides the case. A proper Jackson determination wasn't made here. Therefore, it's contrary to. The Nevada Supreme Court got it wrong, and when a state court does that, that's what this habeas court is here for. And the writ should be granted. In terms, if the court doesn't agree with that, and it moves on to an unreasonable application of Jackson and or unreasonable determination of the facts, I believe that what the Nevada Supreme Court did not do is to look beyond the speculative evidence that was presented and the counteractive reasonable deductions that don't make, that don't result in murder here. The circumstances of the disappearance, she did tell, and her mom both said that they were going to take her to move to California to live with her brother, Travis. The state never proved Travis, but they never disproved that that didn't happen. Another determination that the District Court and the Nevada Supreme Court neglects to look at is that there was a neighbor that testified that, clearly, there were boxes at the bottom of the apartment. This move was going to take place. In terms of what the state has argued regarding the bugs and blowflies versus maggots and all of that evidence, again, what doesn't make sense when you look at that, in terms of when the state asserted that Ms. Smith disappeared and, therefore, had to have been murdered by Ms. West, is the fact that, based upon that, the storage unit was rented four months after the last person testified that they saw Ms. Smith. It doesn't make sense regarding when those bugs were found and what happened, what could have possibly happened with Ms. Body within those four months, that four-month period that occurred before that storage unit was found. Again, the coroner determined that they couldn't make a cause of death, and although we have a unique burial situation here, again, it's strange and inappropriate, but it's not murder. Who's to say how people react when a parent dies? Certainly, this is an unusual way to react, but the state is charged with, proving beyond a reasonable doubt that Ms. West committed this act of criminal agency, and when you take a look at everything and you take a look at the strained relationships versus the equal testimony on each side saying that their relationship was just fine, when you take a look at Smith's best friend who testified that Ms. West took her to the storage unit, none of this makes sense in determining whether or not it is pure speculation and not reasonable deduction for the jury to determine that Ms. West killed her and then put her into the storage unit when she's bringing her best friend to the storage unit and they're taking care of things and moving things in and out. It would have been far easier if Ms. West was trying to commit the perfect crime to take her to the big old desert of Las Vegas and dispose of a body in another manner as opposed to putting her into a storage unit that she rented. I'm not saying to look at everything in isolation, which is how the Nevada Supreme Court did. What this Court has to do is take a look at the entire record, and all the evidence received determines that even under the double hurdle of Harrington that we have under Ed, Pat, and Jackson, in this particular instance, in these particular facts, it's compelling enough to make it clear that the state court's application of Jackson was unreasonable and the writ should be granted. Thank you, counsel. Thank you both for your arguments. The case just heard will be submitted for decision. It will be in recess. As you may have noted, we have some students here today. We will have a question and answer period afterwards, but as is our practice, we will not take any questions about any case argued today. With that, we'll be in recess.
judges: Albritton, Thomas, Murguia